## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SILVERIO LUIS ASIJTUI OXI, | : | Civil No. 1:26-CV-01514 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| KRISTI NOEM, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Silverio Luis Asijtuj Oxi ("Asijtuj Oxi"). (Doc. 1.) Asijtuj Oxi argues that he is being wrongfully detained. For the reasons that follow, the court will grant Asijtuj Oxi's petition and order his immediate release.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Asijtuj Oxi is a native and citizen of Guatemala. (Doc. 8-2, p. 2.)[1] Asijtuj Oxi entered the United States at an unknown location on or about November 25, 2004. (Doc. 1, p. 2.) He was encountered by United States Border Patrol on December 21, 2005, and removed from the United States via voluntary return. (Doc. 8-2, p. 3.) On December 30, 2005, United States Border Patrol again encountered Asijtuj Oxi and removed him via voluntary return. (*Id.* at 3–4.)

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

On March 20, 2020, Asijtuj Oxi applied for asylum and withholding of removal, which remains pending.  (*Id.* at 4.)  On multiple occasions in 2020, 2021, 2022, and 2024 Asijtuj Oxi filed employment authorization applications, and was approved for employment authorization in 2024.  (*Id.*)

On April 29, 2026, Immigration and Customs Enforcement ("ICE") encountered Asijtuj Oxi during a targeted enforcement operation in Newark, New Jersey and determined that he was not lawfully present in the United States.  (*Id.* at 3.)  Asijtuj Oxi was detained and issued a notice to appear charging him as removable pursuant to the Immigration and Nationality Act ("INA") §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I).  (*Id.*)  Asijtuj Oxi is currently detained at the Pike County Correctional Facility and had an immigration hearing scheduled for June 24, 2026.  (Doc. 8, p. 5.)

On June 3, 2026, Asijtuj Oxi filed a petition for writ of habeas corpus requesting release from detention against Kristi Noem, Secretary of the Department of Homeland Security; Pam Bondi, Attorney General; Todd Lyons, Acting Director of ICE; and the Warden of Pike County Correctional Facility

("Respondents").[2]  (Doc. 1.)  Respondents filed a response on June 23, 2026, and

Asijtuj Oxi did not file a traverse.[3]  (Docs. 8.)  Thus, this petition is ripe for review.

### STANDARD OF REVIEW AND JURISDICTION[4]

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of

habeas corpus when an immigration detainee is "in custody in violation of the

Constitution or laws or treaties of the United States."  Claims related to an

immigration detainee's request for release from confinement must be brought as a

habeas petition as these "claims fall within the 'core' of the writ of habeas corpus."

*Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167

(2022)).  Jurisdiction for "core habeas petitions . . . lies in only one district: the

district of confinement."  *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443

(2004)) (internal quotations omitted).  Asijtuj Oxi is detained at Pike County

---

[2] Respondents submit that the only proper respondent is Craig A. Lowe because he is the Warden of Pike County Correctional Facility.  (Doc. 8, p. 1, n.1.)  In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent.  *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.")  The court will not address an argument requesting dismissal of other Respondents when only raised in a footnote.

[3] Asijtuj Oxi also filed a motion for temporary restraining order on June 3, 2026.  (Doc. 2.) Because the court is ruling on Asijtuj Oxi's petition, the court will deny the motion for temporary restraining order as moot.

[4] Unlike prior habeas petitions before this court that presented similar issues, Respondents do not argue that the court lacks subject matter jurisdiction in this case, thus, the court will not address that issue here.  (*See* Doc. 8.)

Correctional Facility, which is within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b).

**DISCUSSION**

In his pro se petition, Asijtuj Oxi argues that he is improperly detained. (Doc. 1.) He submits that, at a minimum, he should receive a bond hearing under 8 U.S.C. § 1226(a). (*Id.* at 6.) Asijtuj Oxi requests that he be immediately released from custody or, alternatively, provided a bond hearing. (Doc. 1, p. 7.)

Respondents submit that Asijtuj Oxi is detained pursuant to Section 1225(b)(2)(A). (Doc. 8, p. 2.) Respondents asserts that Asijtuj Oxi falls within the statutory definition of "applicant for admission," he is properly detained under Section 1225(b)(2), and Section 1226(a) is inapplicable to him. (*Id.* at 15–39.) Respondents submit that the plain language of Section 1225(b)(2) requires detention of applicants for admission and that the section's reference to noncitizens "seeking admission" does not narrow the scope of Section 1225(b)(2). (*Id.* at 16–30.) Respondents further argue that its interpretation of Section 1225(b)(2)(A) does not make Section 1226(a)'s discretionary detention authority superfluous and *Jennings* does not undermine Respondents' interpretation. (*Id.* at 30–39.) Respondents also assert that Asijtuj Oxi's temporary detention does not violate due process. (*Id.* at 40–43.) Alternatively, if the court wishes to grant Asijtuj Oxi's

4

petition, Respondents request that the court order a bond hearing rather than releasing Asijtuj Oxi.  (*Id.* at 43–44.)

Section 1225 of the INA is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  8 U.S.C. § 1225.  It defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ."  *Id.* § 1225(a)(1).  Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Noncitizens subject to this mandatory detention may only be released while their removal proceedings are pending "for urgent humanitarian reasons or significant public benefit."  *Jennings*, 583 U.S. at 288.  The BIA recently decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), wherein the BIA held that noncitizens who enter the United States without admission are subject to mandatory detention under Section 1225(b)(2)(A), and thus, immigration judges lack the authority to provide a bond hearing.

Conversely, 8 U.S.C. § 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed

5

from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—

   (1) may continue to detain the arrested alien; and

   (2) may release the alien on—

      (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

      (b) conditional parole; but

   (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Asijtuj Oxi is detained pursuant to Section 1225(b)(2)(A) and neither party alleges that Asijtuj Oxi is subject to Section 1226(c).[5]  (*See* Docs. 1, 8.)

The Second, Sixth, Tenth, and Eleventh Circuit Courts of Appeals and federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Asijtuj Oxi, a noncitizen who previously entered and had been living in the United States prior to his detention.[6]  *See, e.g.*, *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (holding that petitioner's "detention is governed by Section 1226(a), not Section 1225(b)(2)(A)"); *Lopez-Campos v.*

---

[5] Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section.  8 U.S.C. § 1226(c).

[6] The court acknowledges that there are some district courts, as well as the Fifth and Eighth Circuit Courts of Appeals, who have agreed with Respondent's interpretation of Section 1225. (*See* Doc. 8, p. 3–4.)  *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  However, none of these decisions are binding on this court.

*Raycraft*, 175 F.4th 713 (6th Cir. 2026) (same); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026) (same); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F. 4th 1258 (11th Cir. 2026) (same); *Hernandez v. Kunes*, No. 1:25-cv-1847, 2026 WL 411726 (M.D. Pa. Feb. 13, 2026) (Wilson, J.) (holding Section 1225(b) was inapplicable to petitioner); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*, 3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same).  "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225." *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

The court is persuaded by and agrees with the Second, Sixth, Tenth, and Eleventh Circuit Courts of Appeals and the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section

7

1225(b)(2)(A).  Asijtuj Oxi's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States."  *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025).  Thus, this section simply does not apply to someone like Asijtuj Oxi, who has been residing in the United States for approximately twenty years.  *Id.* (collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation of "seeking admission" violates the rule against surplusage and contradicts the plain meaning of the statutory text.  *Bethancourt Soto*, 807 F. Supp. at 406 (finding that respondents' interpretation "violates the rule against surplusage and negates the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at *5 (citing *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL 3294726, at *5 (E.D. Pa. Nov. 25, 2025)) (same).  If Section 1225(b)(2)(A) applied to every "applicant for admission," the phrase "seeking admission" would become unnecessary and surplusage.[7]  *Bethancourt Soto*, 807 F. Supp. 3d at 406–07

---

[7] *Bethancourt Soto*, 807 F. Supp. 3d at 407, provides a helpful example of why Respondents' interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word" that Congress chose to include.  *See* Polansky, 599 U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

8

(citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute should have meaning" and "no clause, sentence, or word shall be superfluous, void, or insignificant"). Further, "seeking admission" connotes "some affirmative, present-tense action" such that it "requires an act currently underway not a static condition." *Id.* at *5 (citations omitted). Thus, Respondents' argument that Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the plain meaning of the words "seeking admission."[8]

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at *6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

---

[8] Again, the examples provided by the court in *Bethancourt Soto*, 807 F. Supp. 3d at 406–07, are illustrative of why Respondents' argument fails:

> For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, —— F.Supp.3d at ——, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point— one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id.*

In sum, Asijtuj Oxi is not currently "seeking admission" to the United

States. That was his status when he entered the United States. Therefore, Section

1225(b)(2)(A) does not apply to him as he is not currently "seeking admission" to

the United States.

Addressing Asijtuj Oxi's constitutional claims, it is undisputed that "once an

alien enters the country, the legal circumstance changes, for the Due Process

Clause applies to all 'persons' within the United States, including aliens, whether

their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533

U.S. at 693 (citations omitted). Thus, the court must determine what process is due

to Asijtuj Oxi, who is currently subject to mandatory detention without a bond

hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335

(1976). *Mathews* requires the court to weigh three factors: (1) "the private interest

that will be affected by the official action;" (2) "the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if

any, of additional or substitute procedural safeguards;" and (3) "the Government's

interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail." *Id.* at 335.

The first factor weighs heavily in Asijtuj Oxi's favor because the "official

action" has deprived him of his physical liberty. *See Hamdi v. Rumsfeld*, 542 U.S.

507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being

10

free from physical detention by one's own government."). The second factor similarly swings in Asijtuj Oxi's favor because he "is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing." *Bethancourt Soto*, 807 F. Supp. 3d at 409 (emphasis in original). As to the third factor, the court recognizes Respondents' interest in detaining noncitizens to ensure "the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Still, this factor weighs in favor of Asijtuj Oxi because Respondents do not contend that he poses a danger to the community or that he is a flight risk. Accordingly, the *Mathews* factors weigh in Asijtuj Oxi's favor and the court finds that his mandatory detention without a bond hearing under Section 1225(b)(2)(A) violates his procedural due process rights. *See Bethencourt Soto*, 2025 WL 2976572 at *8 ("Taken together, the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor, and as such his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights.") (citations omitted); *Patel*, 2025 WL 3516865 at *6 (holding same). Thus, the court will grant Asijtuj Oxi's petition and release him on his own recognizance as he was prior to his detention April 2026.

11

### CONCLUSION

For these reasons, the court will grant Asijtuj Oxi's petition for writ of

habeas corpus and order his immediate release.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: July 16, 2026